IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Hazel Stoudemire, #220501       )<br>                                                   )<br>                              Petitioner,   )<br>                                                   )<br>vs.                                            )<br>                                                   )<br>                                                   )<br>A.J. Padula, Warden of Lee Correctional)<br>Institution,                                 )<br>                                                   )<br>                              Respondents. )<br>_____ ) | Civil Action No. 8:07-3272-HFF-BHH<br><br>**REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

The petitioner, Hazel Stoudemire, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254. The petitioner has filed a motion for summary judgment. [Doc. 8.] The respondent has filed a return and cross motion for summary judgment seeking dismissal of the petition. [Doc. 15.]

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this Magistrate Judge is authorized to review post trial petitions for relief and submit findings and recommendations to the District Court.

The petitioner brought this habeas action on September 28, 2007. On December 28, 2007, the respondent moved for summary judgment. By order filed January 2, 2008, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On January 22, 2008, the petitioner filed a response.

**BACKGROUND**

The petitioner is presently confined in the Lee Correctional Institution, of the South Carolina Department of Corrections (SCDC), pursuant to commitment orders from the Spartanburg County Clerk of Court. The Spartanburg County Grand Jury indicted the petitioner at the April 1999 term of court for murder (1999-GS-42-2188). (R. at 572-73.) The petitioner was represented by J. Michael Bartosh, Esquire.

The plaintiff received a jury trial before the Honorable Lee S. Alford on April 11, 2000. The jury convicted him, as charged, and Judge Alford sentenced him to life imprisonment. (R. at 49-492; Supp. App. at 27.)

At trial the evidence reasonably tended to establish that a Donnie Young, Pete Peahuff, Marc Bagby, and Reginald Smith were riding with the petitioner, in the petitioner's car, on January 3, 1999. (R. at 230.) The petitioner was driving. *Id*. The evidence suggests that he stopped his car at some point and ordered the passengers to get out of it. (R. at 231.) The plaintiff left briefly. *Id*. When he returned, he had a gun and began arguing with Smith about tires or tire rims that he claimed Smith had stolen from him. (R. at 232.) The petitioner fired his gun, and Smith turned to run. *Id*. The petitioner shot Smith as he ran away, causing Smith to collapse some distance from the car. *Id*. The petitioner drove his car to Smith's body, stood over him, and fired again. *Id*. Smith had been shot twice, once in the arm and once in the chest, causing internal hemorrhaging and subsequently, his death. (R. at 406-11.)

### DIRECT APPEAL

The petitioner timely served and filed a notice of appeal. Deputy Chief Appellate Defender Joseph L. Savitz, III, represented him on appeal. On Jan 15, 2002, the South Carolina Court of Appeals affirmed the petitioner's conviction in an unpublished Opinion.

(Supp. App. at 22-24.) The South Carolina Court of Appeals sent the Remittitur to the Spartanburg County Clerk of Court on January 31, 2002.  (Supp. App. at 25.)

### FIRST PCR APPLICATION

The petitioner filed a *pro se* Post-Conviction Relief (PCR) Application, on March 13, 2002.  The Honorable J. Derham Cole held an evidentiary hearing on November 10, 2003, at the Spartanburg County Courthouse.  On June 6, 2004, Judge Cole filed an Order of Dismissal, in which he denied relief and dismissed the Application with prejudice.  The petitioner did not perfect an appeal from this Order.

### SECOND PCR APPLICATION

The petitioner filed a second PCR Application, on June 23, 2004.  In his second Application, the petitioner alleged that he had received ineffective assistance of PCR counsel. (R. at 528-34.)  The Honorable Roger L. Couch held an evidentiary hearing into the matter on October 24, 2005, at the Spartanburg County Courthouse.  (R. at 546-52.) On January 4, 2006, Judge Couch filed an Order of Dismissal, in which he denied relief and dismissed the Application with prejudice, but ruled that the petitioner was entitled to a belated appeal from his denial of relief in his First PCR action, under *Austin v. State*, 409 S.E.2d 395 (1991) (an applicant has a right to an appellate counsel's assistance in seeking review of the denial of PCR).

### APPEAL OF SECOND PCR APPLICATION

The petitioner filed a timely notice of appeal of his Second Application.  The South Carolina Supreme Court filed an Order on August 23, 2007, in which it (1) granted the petition for writ of certiorari to review Judge Couch's Order, dispensed with further briefing and reviewed Judge Cole's Order; and (2) denied the petition for writ of certiorari from Judge Cole's Order. (Def. Summ. J. Attach. 24.) The South Carolina Supreme Court sent the Remittitur to the Spartanburg County Clerk of Court on September 19, 2007.

3

## APPLICABLE LAW

### Liberal Construction of *Pro Se* Complaint

The petitioner brought this action *pro se*. This fact requires that his pleadings be accorded liberal construction. *Estelle v. Gamble*, 429 U.S.97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F.2d 1291 (4th Cir.1978); *Gordon v. Leeke*, 574 F.2d 1147 (4th 1978). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes v. Rowe*, 449 U.S. 5 (1980) (per curiam). Even under this less stringent standard, however, the *pro se* petition is still subject to summary dismissal. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir.1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411 (7th Cir.1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985).

### SUMMARY JUDGMENT STANDARD OF REVIEW

The requirement of liberal construction does not mean that the court can assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. *See* Fed. R. Civ. P. 56(c). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary

judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

### HABEAS STANDARD OF REVIEW

Since the petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding.

28 U.S.C. § 2254(d)(1)(2).

Federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings." 28 U.S.C.. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 398 (2000) (plurality opinion). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410.

5

**DISCUSSION**

The petitioner raises the following grounds for relief in his *pro se* Petition for Writ of Habeas Corpus. The Court will address each in turn.

**GROUND ONE:** 6th Amendement Confrontation Violation. Trial Court erred in admitting Jessica Kelly testimony under Rules 801 and 803 (Hearsay)

**GROUND TWO:** Appellate Counsel erred in failing to offer argument challenging the trial court alternative ruling issue.

**GROUND THREE:** 6th Amendment. US Constitution. Ineffective Assistance of Trial Counsel, Failure to require witnesses sequestration.

**GROUND FOUR:** 6th Amendment. US Constitution. Ineffective Assistance of Trial Counsel, Failure to Request Cautionary Accomplice Instruction.

**GROUND FIVE:** 6 th Amendment. US Constitution. Ineffective Assistance of Trial Counsel, trial counsel erred in failing to suppress irrelevant evidence.

**GROUND SIX:** 6th Amendment. US Constitution. Ineffective Assistance of trial counsel in failure to investigate Petitioner's case.

**GROUND SEVEN:** 6th Amendment. USCA. Trial Counsel was ineffective in failing to subpoena and call for trial favorable witnesses in the case.

**I.    GROUND ONE**

The petitioner's first allegation is that the "Trial Court erred in admitting Jessica Kelly testimony under [South Carolina] Rules [of Evidence] 801 and 803 (Hearsay)." (Pet. at 6.) The respondent interprets this claim as one based on a violation of the confrontation clause of the federal constitution because the plaintiff inserted the phrase "6th Amendement Confrontation Violation" in the title of the claim. The plaintiff, however, has not made any argument grounded in constitutional or federal law. Instead, he has expressly argued Ground 1 as an issue of state evidentiary law. He states: "Respondent wishes this court to hear the **Rule 803(1)(2), SCRE, claim** and dismiss the **Rule 801(d)(1)(b), SCRE claim**.

6

Finally, again the **sole issue** on appeal is whether trial court erred by admitting testimony from Jessica Kelly, under both rulings." (Pl. Resp. at 3 (bold added, underline in original).)

The plaintiff nowhere makes any claim that Kelly's testimony was admitted based upon some unreasonable application of federal law, constitutional or otherwise. He has exclusively argued a state law basis for Ground 1. To that end, the claim is barred because habeas relief is unavailable for misapplication of state evidentiary law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law." (quotation omitted)).

Although the petitioner has not pled any express claim for ineffective assistance of counsel in regards to Ground 1, he makes some comments in his response to summary judgment which seem to suggest that he believes his appellate counsel was deficient in his performance for not challenging the admissibility of Kelly's testimony under both S.C. R. Evid. 801 & 803. On appeal, only the 801 ruling was challenged. (Supp. Appx. at 6.) As will be discussed concerning the petitioner's Ground 2, Kelly's testimony was admissible under Rule 801 and, therefore, any failure to raise the Rule 803 issue would be harmless. There need only be one basis for the admissibility of a piece of evidence.

## II.   GROUND TWO

In Ground Two, the petitioner expressly alleges, that which he implied in Ground 1, that his Appellate Counsel failed to challenge the trial court's ruling to allow a Jessica Kelly to provide testimony under the excited utterance exception to the hearsay rule, S.C. R. Evid. 803(2). As stated, appellate counsel challenged the admissibility of Kelly's testimony under S.C. R. Evid. 801, only. (Supp. Appx. at 6.) On direct appeal, the South Carolina Court of Appeals declined to address whether the testimony was properly admissible under Rule 801 because the trial court had cited an alternative basis under Rule 803, which was not challenged on appeal. The Court of Appeals, therefore, dismissed the appeal because only one basis for admission was necessary.

The petitioner contends that appellate counsel, therefore, made a prejudicial mistake by not appealing both grounds. While it is true that an effective appeal necessarily should have challenged both bases of admissibility, the Court disagrees that the petitioner is entitled to relief because he has not demonstrated a likelihood that any prejudice has accrued to him from the oversight.

A defendant has a constitutional right to the effective assistance of appellate counsel. *Evicts v. Luce*, 469 U.S. 397, 396-97 (1985). In order to establish an ineffective assistance of appellate counsel claim, a defendant must demonstrate "that his counsel was objectively unreasonable in failing" to identify and argue an issue, and "a reasonable probability that, but for his counsel's unreasonable failure . . ., he would have prevailed on his appeal." *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Reviewing courts must accord appellate counsel the "presumption that he decided which issues were most likely to afford relief on appeal." *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir.1993). Counsel is not obligated to assert all nonfrivolous issues on appeal, as "[t]here can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review." *Jones v. Barnes*, 463 U.S. 745, 752 (1983). Winnowing out weaker arguments and focusing on those more likely to prevail is the hallmark of effective appellate advocacy." *Id.* at 751.

The petitioner raised Ground 2 in his PCR application. (R. at 536.) The PCR Court rejected this argument as "wholly lacking merit," although it provided no specific interpretation of federal law capable of review. (R. at 526)

Notwithstanding, the petitioner cannot prevail on Ground 2 because he has not made any showing that but for his appellate counsel's decision not to appeal the admission of Kelly's testimony under Rule 803, he would have prevailed – in other words, that he suffered prejudice. *See Strickland v. Washington*, 466, U.S. 668, 687 (1984). Specifically, the petitioner has failed to show that, had it addressed the merits of his claim, the South

Carolina Court of Appeals would have found Kelly's testimony not properly admissible under Rule 801(d)(1)(B) of the South Carolina Rules of Evidence.  Therefore, any failure of appellate counsel to contest the Rule 803 basis is of no moment – the testimony would have been properly considered admissible under Rule 801.

Rule 801(d)(1)(B) provides that "[a] statement is not hearsay if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive; provided, however, the statement must have been made before the alleged fabrication, or before the alleged improper influence or motive arose." S.C. R. Evid. 801(d)(1)(B). Kelly's testimony meets all the criteria of the rule.

### a.    Consistency

First, Kelly's testimony was offered as consistent with Marc Bagby's, a witness to the murder for which the petitioner was convicted.  Bagby testified that he was with the petitioner on the day of the murder and that he observed the petitioner shoot the victim a number of times.  (R. at 259-64.)  Kelly likewise testified that Bagby had confessed to her a similar incident on January 4, the day after the shooting.  (R. at 347-54.)  Consistent with his trial testimony, Bagby had told Kelly that the petitioner shot an unnamed individual, multiple times, over a dispute concerning a pair of rims or tires.  (R. at 348.)  The record does not reveal any patent discrepancies between Bagby's trial testimony and his original comments to Kelly.

### b.    Alleged Fabrication

Second, defense counsel expressly questioned Bagby as to whether his statement to detectives was fabricated out of self interest and at the urging of an interrogating officer. (R. at 269-72.)  Defense counsel emphasized that Bagby gave two statements and suggested, expressly, that Bagby had falsified details of the story if not the entire story,

including the identity of the individuals present at the time of the shooting. *Id*. The plaintiff contends that defense counsel was simply attempting to impeach Bagby's account as to particular details and not, as the rule contemplates, implying an improper motive for actual fabrication. The record, however, simply does not support the petitioner's interpretation. The implication of defense counsel was specifically that Bagby's statement was fabricated because it was in his "best interest." (R. at 271.) This implication seems to be of the kind precisely contemplated by Rule 801.

### c.    Timing

Lastly, Bagby's original, out-of-court statements to Kelly occurred prior to his arrest. In other words, the prior consistent statement was made before the alleged motivation to lie or alter his testimony arose, as required by Rule 801.

Accordingly, all of the elements of Rule 801(d)(1)(B) were satisfied. Therefore, any error in appellate counsel's decision not to appeal the Rule 803 basis is harmless because the conviction would have been affirmed regardless. The plaintiff has made no persuasive argument that if the South Carolina Court of Appeals had been compelled to consider the Rule 801 argument, on its merits, that it would have rejected it as an effective basis for the admission of the testimony. The petitioner has simply not produced evidence of a "reasonable probability that, but for his counsel's unreasonable failure . . ., he would have prevailed on his appeal." *Smith v. Robbins*, 528 U.S. 259, 285 (2000). It is his burden to do so.

## III.    Ground Three

The plaintiff next contends that his trial counsel failed to request that Bagby and Kelly be sequestered during the trial. The plaintiff argues that this failure allowed them to tailor their testimony to the testimony of other witnesses at trial.

Claims of ineffective assistance of trial counsel are governed by the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the petitioner "must

show that counsel's performance was deficient." *Id.* at 687. To prove deficiency, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Second, the petitioner must show that the deficient performance actually prejudiced him. Review of counsel's performance is "highly deferential." *Id.* at 689. In addition, competency is measured against what an objectively reasonable attorney would have done under the circumstances. *See id.* at 687-89. Counsel are afforded a strong presumption that their performance was within the broad range of professionally competent assistance. *See id*. at 689. Courts are reluctant to second guess the trial tactics of lawyers. Where counsel articulates valid reasons for employing certain strategy, such conduct will not be deemed ineffective assistance of counsel. *See Daniels v. Lee*, 316 F.3d 477, 491 (4th Cir. 2003); *Stokes v. State*, 419 S.E.2d 778, 779 (S.C. 1992).

The PCR Court found that "sequestering witnesses could easily have been made. However, the Applicant's assertion that having witnesses in the Court room to 'get their stories straight' was not credible. The various witnesses had given statements to law enforcement." (R. at 523.) Accordingly, the PCR Court rejected that the representation was deficient under the first prong of *Strickland*. *Id*. The PCR Court further determined that the petitioner had failed to make any showing that the failure to sequester witnesses resulted in any prejudice to him. *Id*.

This analysis was an imminently reasonable application of *Strickland*. Trial counsel specifically testified that he did not move to sequester Kelly and Bagby because Kelly had already provided a statement concerning what Bagby had allegedly told her. (R. at 517.) Trial counsel also stated that Bagby had already had lengthy discussions with the solicitor's office in preparing for his testimony. *Id*.

"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options *are virtually unchallengeable*; and strategic choices made after less than

complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91 (emphasis added). In order to prevail on his claim, the petitioner must overcome the strong presumption that, "under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689.

The petitioner has failed to rebut his trial counsel's testimony that his decision to not request sequestration was part of his reasoned trial strategy. He has similarly failed to show that this strategy was objectively unreasonable. In fact, the petitioner expressly admits that out-of-court statements had been offered, the existence of which necessarily diminished the likelihood that the witnesses could retool their testimony at trial without fear of damaging impeachment. (See Pl. Resp. at 12.) The plaintiff seems to suggest it was prejudicial to him to create opportunity for the witnesses to tailor their in-court testimony in a way that would be "inconsistent" with out-of-court statements. *Id*. In fact, it was beneficial to him. Any attempt to reconstruct testimony after hearing another witness's account at trial, would be susceptible to persuasive cross examination. In fact, trial counsel did use Bagby's and Kelly's presence in the court room as part of his attempt to impeach them during cross-examination. (R. at 266-67, 350-53.)

Moreover, the plaintiff has made no attempt to demonstrate that the PCR Court's determination was erroneous that no prejudice followed from the failure to sequester.

For all of these reasons, the state court's application of *Strickland* was not unreasonable, and the plaintiff's third Ground must fail.

**IV.    Ground Four**

In his fourth Ground, the petitioner contends that he received ineffective assistance of counsel for the failure of his trial counsel to request a cautionary instruction on accomplice testimony. The respondent contends that the petitioner's first ground for relief

is procedurally barred. The Court agrees and is, therefore, precluded from considering its merits. *See Matthews v. Evatt*, 105 F.3d 907, 916 (4th Cir. 1997).

The petitioner must exhaust all available state court procedures prior to seeking federal court review of his claim. 28 U.S.C. §2254(b)(1)(A); *see Weeks v. Angelone*, 176 F.3d 249, 257 (4th Cir. 1999). The exhaustion requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991).

When a petitioner seeking relief has failed to exhaust a claim at the appropriate time in state court and has no further means of bringing that issue before the state courts, the petitioner is procedurally barred from raising the issue in his federal habeas petition. *Smith v. Murray*, 477 U.S. 527, 533 (1986). A petitioner can bypass a procedural bar if he can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *See Coleman*, 501 U.S. at 750.

Additionally, a petitioner may rely on the doctrine of actual innocence. "Actual innocence" is not an independent claim, but only a method of excusing default. *O'Dell v. Netherland,* 95 F.3d 1214, 1246 (4th Cir. 1996). To prevail under this theory, a petitioner must produce new evidence which was not available at trial to establish his factual innocence. *Royal v. Taylor*, 188 F.3d 239, 244 (4th Cir.1999).

Lastly, once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. *See Matthews*, 105 F.3d at 916. The Fourth Circuit has stated that it is always tempting to discuss the merits as an alternative reason for a conclusion, but that once a court finds an issue to be procedurally barred, all discussion which follows is only *dicta*. *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995). Thus, once

a court has determined that a claim is procedurally barred, it should not stray into other considerations. *Id*.

Here, the petitioner's Ground 4 was raised in his second PCR application. (R. at 536.) The PCR Court found that the issue was barred as successive under S.C. Code § 17-27-90, *see Aice v. State*, 409 S.E.2d 392 (S.C. 1991), and untimely under the one-year statute of limitations which governs the filing of PCR actions, S.C. Code§ 17-27-45(A). (R. at 556-57.) The Supreme Court of South Carolina necessarily affirmed that decision. (Def. Summ. J. Attach. 24.)

Because the petitioner's claim was deemed procedurally defaulted based upon independent rules of state procedure, the Court is barred from considering Ground 4 absent a showing of "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[ ] will result in a fundamental miscarriage of justice." *Matthews*, 105 F.3d at 916. The petitioner makes no argument or showing of cause, for the default, or prejudice resulting from the same. (Pl. Resp. at 14.) Nor does the plaintiff make any showing of actual innocence. Instead, the petitioner simply contends that the issue was, in fact, raised. (R. at 518, 536.) While he did raise it in his Second PCR Application, as stated, it was never ruled upon by the state court because it was out of time and successive. Accordingly, the claim should be dismissed.

**V.    Ground Five**

As a fifth Ground, the plaintiff contends that his trial counsel was ineffective for not moving to suppress evidence of shell casings allegedly found at the crime scene. The plaintiff contends that such casings could not be linked to the crime and, therefore, were both irrelevant and prejudicial.

The PCR Court rejected this argument as "wholly lacking merit," but provided no more specific grounds for rejecting it. (R. at 526.) Notwithstanding, the petitioner's Ground 5 must fail.

14

Paul Dorman, a forensic investigator and AFIS analyst for the Spartanburg County Sheriff Office, testified about photographing and processing the crime scene. (R. at 138-46; 149.) He found two shoe impressions and four 9 mm shell casings close to the body, as well as one in the roadway. (R. at 141-44.) Also, "[t]here was blood spatter [where the body was laying] as well as on the other side of the body close to the head." (R. at 142.) Likewise, "[t]here were four indentations in the concrete that appeared to be where bullets had hit the concrete." *Id*. Dorman found two spent bullet fragments at the other end of the tunnel and two others at the scene. (R. at 141, 43.) Finally, he testified that a bullet was recovered from the victim at autopsy, and that it matched the casings from the crime scene: the fragments "were fired from (sic) a similar type of bullet as [was] used," and "the bullet was matched to that caliber of firearm and it appeared to be in the same way." (R. at 146.) The actual gun was never found.

SLED Agent David Collins, an expert in firearms and firearms identification, subsequently provided expert testimony concerning the casings. He testified that he examined the three bullet fragments found at the scene, the bullet removed from the victim's body, and five shell casings found at the scene. He testified that (1) all five shell casings had been fired by one weapon; (2) the four fragments and the bullet removed at autopsy had been fired by only one weapon; and (3) another fragment was not suitable for testing. (R. at 274-80.)

The petitioner argues, however, that Collins ultimately testified that the casings and fragments came from two *separate* guns. (R. at 279-81.) The petitioner's position is not an accurate characterization of Collins' testimony. Collins testified only that, without the weapon, he could not determine for certain whether the "bullets and bullet fragments were fired from the same gun that fired the cartridge cases." (R. at 281.) None of Collins' testimony renders the casings either "irrelevant" or excludable. To the extent Collins'

15

testimony interjected doubt into whether the bullets found at the crime scene were consistent with the allegations levied by other witnesses against the petitioner, it created a jury issue.  The casings found were highly probative and any prejudicial effect created by incomplete expert testimony was dispositively outweighed by their value.

The petitioner's trial counsel testified that he saw no basis to object to admission of the shell casings (R. at 514), and the Court cannot discern one.  The petitioner himself has not provided any basis.  Accordingly, trial counsel's efforts cannot be characterized as deficient under *Strickland* and the PCR Court was not unreasonable in so concluding.

## VI.     Grounds Six and Seven

In his response to summary judgment, the petitioner has presented no evidence or argument concerning Grounds 6 and 7 and, therefore, the Court considers them abandoned.  In fact, the petitioner specifically refers to Ground V as his "last[]."  Further, in his own motion for summary judgment, he has only argued the first five grounds of relief.

Moreover, after a review of the memorandum in support of the defendant's motion for summary judgment as to these two grounds, and based on the reasoning contained therein, it is clear that the plaintiff's Grounds VI and VII would fail as a matter of law.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the respondents' motion for summary judgment be GRANTED [Doc. 15] and the petitioner's motion for summary judgment should be DENIED [Doc. 8].

                                                          s/Bruce H. Hendricks
                                                          United States Magistrate Judge


July 11, 2006
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 10768
> Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).